# EXHIBIT A

Christopher F. Morales (SBN 153152)
Attorney at Law
Matthew R. Haas (SBN 327678)
Associate Attorney
1388 Sutter St, Suite 805
San Francisco, CA 94109
Telephone: (415) 552-1215
Fax: (415) 674-7643
Email: chris@moralesdefense.com

Attorneys for the Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>            Plaintiff,<br><br>    vs.<br><br>YUI LUN WU,<br><br>            Defendant | Case No.: 3:19-cr-00255<br><br>MOTION TO SUPPRESS EVIDENCE OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT<br><br>Date:<br>Time:<br>Dept: |

TO THE COURT AND THE UNITED STATES, THROUGH THE UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE THAT on the above date and time, or as soon thereafter as the matter can be heard, the Defendant, Mr. Yui Lunn Wu, by and through counsel, moves the court to issue an order suppressing evidence obtained as a result of search and seizure by Customs and Border Patrol (hereafter 'CBP') agents, to wit:

1. All evidence found during and as a result of the CBP's unlawful border search of Mr. Wu's personal laptop (ASUS).

2. All evidence found during and as a result of the CBP's unlawful border search of Mr. Wu's work laptop (DELL).

3. All evidence found during and as a result of the CBP's unlawful border search of Mr. Wu's personal cell phone (Galaxy).

4. All evidence found during and as a result of the CBP's unlawful border search of Mr. Wu's work cell phone (iPhone).

1

5. All evidence found during and as a result of the CBP's unlawful border search of Mr. Wu's SIM card.

6. All evidence found during and as a result of the CBP's unlawful border search of Mr. Wu's Kingston USB drive, Logitech USB drive, and Samsung 128 USB drive.

This motion is made under Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure on the ground that the search and seizure violated the Defendant's rights under the Fourth Amendment to the United States Constitution.

This motion is based on the attached points and authorities, the testimony of any witnesses at the hearing, the attached declarations of Defendant's counsel, the files and records in this action, and any further evidence or argument that the Court may properly receive at or before the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF FACTS

On or about April 18, 2019, members of the Homeland Security Investigations (hereafter 'HSI') Cyber Crimes Unit and the HIS Intelligence Team utilized Torrential Downpour software to identify IP address 24.4.194.169 as being used from approximately November 17, 2018 to April 17, 2019 in downloading images suspected of containing child pornography from a Peer-To-Peer (hereafter 'P2P') Network. ("Application for Search and Seizure Warrant: VI. Facts Supporting Probable Cause" Wu-SearchWarrant_000056.pdf, hereafter 'Warrant Affidavit 56,' at 84.)

On April 18, 2019, a summons was served on Comcast Cable Communications, LLC (hereafter 'Comcast'), to produce the subscriber information of IP address 24.4.194.169 for the period of November 17, 2018 to April 17, 2019. (Id.) On April 22, 2019, Comcast produced information regarding the subscriber for IP address 24.4.194.169, including:

 a. Subscriber name: Siu King Luk
 b. Address: 20317 Wisteria St. Apt. 4 Castro Valley, CA 94546
 c. Type of Service: High Speed Internet Service
 d. Account Number: 8155400230717645 (Id.)

2

HSI records, as well as California Department of Motor Vehicles (hereafter 'DMV') records, indicated that there were at least three residents of 20317 Wisteria St. Apt. 4, including the defendant, Yui Lun Wu – later, upon execution of a search warrant at the address, agents discovered that there are actually four residents including: (1) Sui King Luk, (2) Ip Chung Wu, (3) Hui Lam Wu, and (4) the defendant, Yui Lun Wu. ("HSI Report of Investigation" USYLW-0000055.pdf, hereafter 'HSI Report 55,' at 57.) None of the records provided by HSI indicate who, if any, of the three known residents was suspected of having downloaded the images suspected of containing child pornography or even of having used P2P Networks. Nor do the records indicate what device(s), or even what type of device(s), was used for the alleged downloads.

HSI records did indicate that IP address 24.4.194.169 downloaded images suspected of containing child pornography for approximately two weeks prior to ceasing activity on or about April 20, 2019 at 5:08 a.m. UTC. (Warrant Affidavit 56 at 84-85.) Travel records indicated that Mr. Wu departed the United States from the San Francisco International Airport (hereafter 'SFO') to Hong Kong on April 20, 2019. (Warrant Affidavit 56 at 85.)

HSI found records detailing Mr. Wu's return flight from Hong Kong back to San Francisco on May 13, 2019. (HIS Report 55 at 57.) HSI then made arrangements for CBP agents, along with a specially requested Computer Forensics Agent (hereafter 'CFA'), to meet Mr. Wu after he got off of his return flight at SFO. (Id.) On May 13, 2019, CBP agents met Mr. Wu after he got off of his flight at SFO and escorted him to a secondary inspection area. (Id.)

Immediately upon arrival at the inspection area, CBP agents went through all of Mr. Wu's luggage and personal property, finding six electronic devices, including: (1) a personal laptop (ASUS), (2) a work laptop (DELL), (3) a personal cell phone (Galaxy), (4) a work cell phone (iPhone), (5) a thumb drive, and (6) a SIM card. (Warrant Affidavit 56 at 85; See Exhibit A "Declaration of Mr. Wu.") After separating these six electronic devices from the rest of Mr. Wu's belongings, CBP agents told Mr. Wu to give them the security passwords for each of the devices, to which Mr. Wu complied, and informed Mr. Wu that they would be conducting a warrantless "border search" of his electronic devices. (HSI Report 55 at 57-58; See Exhibit A.)

After informing Mr. Wu that they were going to conduct a "border search" of his electronic devices, the CBP case agent and the CFA, J. Chinn, took the electronic devices back to a separate review room. (Id. at 58.) In the review room, the CBP case agent, assisted by CFA

Chinn, conducted a "preliminary manual electronic review" of Mr. Wu's devices. (Warrant Affidavit 56 at 85.)

Upon conducting their "preliminary manual electronic review" of Mr. Wu's personal laptop (ASUS), CFA Chinn observed the computer application 'uTorrent.' (HSI Report 55 at 58.) After further review of Mr. Wu's personal laptop (ASUS), the CBP case agent observed approximately 114 videos, approximately 50 of which were suspected of containing child pornography. (Id.)

After observing the videos and images contained on Mr. Wu's personal laptop (ASUS), the CBP case agent contacted Assistant United States Attorney (hereafter 'AUSA') Laura Vartain Horn, who gave the CBP agents concurrence to arrest Mr. Wu for alleged possession of child pornography in violation of 18 U.S.C. § 2252. (Id. at 59.) Mr. Wu's electronic devices were detained at the airport and subjected to further, ongoing forensic review. (Id. at 59-60.)

## ARGUMENT

### I. BORDER SEARCHES ARE LIMITED IN SCOPE TO SEARCHES FOR CONTRABAND AND DO NOT ENCOMPASS SEARCHES FOR EVIDENCE OF PAST OR FUTURE CRIMES.

In *United States v. Kolsuz*, the United States Court of Appeals for the Fourth Circuit (hereafter 'Fourth Circuit') stated, "[t]he justification behind the border search exception [to the warrant requirement of the Fourth Amendment] is broad enough to accommodate not only the direct interception of contraband as it crosses the border, but also the prevention and disruption of ongoing efforts to export contraband illegally."[1]

However, in *United States v. Cano*, a case dealing with the warrantless border search of a cell phone, the United States Court of Appeals for the Ninth Circuit (hereafter 'Ninth Circuit') states its disagreement with the decision of the Fourth Circuit, saying, "Our disagreement focuses precisely on the critical question that we previously identified: Does the proper scope of a border search include the power to search for evidence of contraband that is not present at the

---

[1] *United States v. Kolsuz*, 890 F.3d 133, 143 (4th Cir. 2018).

border? . . . We think that the answer must be 'no.'"² The Ninth Circuit reasoned, "'The [d]etection of . . . contraband is the strongest historic rationale for the border-search exception[,]'" and "'every border-search case the Supreme Court has decided involved searches to locate items being smuggled' rather than evidence."³ Therefore, the Ninth Circuit ruled, "Although we continue to acknowledge that 'the Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border' and that 'the expectation of privacy is less at the border than it is in the interior,' [citation omitted] we hold that the border search exception authorizes warrantless searches of a cell phone only to determine whether the phone contains contraband. A broader search cannot be 'justified by the particular purposed served by the exception.'"⁴

Here, CBP agents conducted a warrantless border search of the electronic devices Mr. Wu had with him at SFO. Therefore, in order for the search to comply with the border search exception to the warrant requirement of the Fourth Amendment, it must have been conducted only to determine whether Mr. Wu's electronic devices present with him at SFO contained contraband, specifically child pornography, not for the purpose of finding evidence of contraband not present at the airport.

## II. BASIC AND ADVANCED BORDER SEARCHES OF ELECTRONIC DEVICES, SUCH AS CELL PHONES OR LAPTOPS, REQUIRE GOVERNMENT AGENTS TO HAVE REASONABLE SUSPICION, BASED ON PARTICULARIZED AND ARTICULABLE FACTS, THAT THERE IS CONTRABAND ON THE DEVICE.

While many federal courts have still yet to decide what level of cause (ex. reasonable suspicion, probable cause, etc.) is required in order for CBP agents to conduct warrantless border

---

² *United States v. Cano* (9th Cir. 2019) 934 F.3d 1002, 1018.

³ *Id.* (quoting *United States v. Molina Isidoro*, 884 F.3d 287, 295 (5th Cir. 2018).); *See United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985) (the border search is "to prevent the introduction of contraband into this country.").

⁴ *Cano*, 934 F.3d at 1018-19 (quoting *United States v. Flores-Montano*, 541 U.S. 149, 152-54 (2004) and *Florida v. Royer*, 460 U.S. 491, 500 (1983).).

searches of electronic devices, "[t]he seeds of applying reasonable suspicion in the border context have already been laid by several Circuits, post-*Riley*."[5]

In *Alasaad v. Nielsen*, the United States District Court for the District of Massachusetts (hereafter 'District of Mass.') held, "Having not discerned a meaningful distinction between the currently defined basic search and advanced search [of electronic devices][6] in terms of privacy interests, reasonable suspicion should apply to both such searches at the border."[7] The District of Mass. also stated, "Moreover, the reasonable suspicion that is required for the currently defined basic search and advance search is a showing of specific and articulable facts, considered with reasonable inferences drawn from those facts, that the electronic device contains contraband."[8]

Here, the CBP case agent and CFA Chinn who conducted the "preliminary manual electronic review" of Mr. Wu's electronic devices, namely his personal laptop (ASUS), performed at least a basic search of the devices because they were able to observe images, files,

---

[5] *Riley v. California*, 573 U.S. 373 (2014); *See Cano*, 934 F.3d at 1017-18; *See Kolsuz*, 890 F.3d at 137; *but See United States v. Touset*, 890 F.3d 1227, 1236 (11th Cir. 2018).

[6] *Alasaad v. Nielsen*, 2019 WL 5899371 at 13-14 (D. Mass. 2019) (involved the border searches of multiple plaintiffs' cell phones by CBP and ICE) ("Accordingly, even a basic search allows for both a general perusal and a particularized search of a traveler's personal data, images, files, and even sensitive information. . . a cursory search of an electronic device [the category below a basic search] – e.g. a brief look reserved to determining whether a device is owned by the person carrying it across the border, confirming that it is operational and contains data – would fall within the border search exception and not require a heightened showing of cause. . . An advanced search can generally reveal anything that would be discovered during a basic search. In addition to data revealed during a basic search, an advanced search may also be able to uncover deleted or encrypted data and copy all of the information physically present on the device depending on the equipment, procedures and techniques used.").

[7] *Nielsen*, 2019 WL 5899371 at 14.

[8] *Nielsen*, 2019 WL 5899371 at 15.

and applications that were stored on the device.[9] Therefore, the agents were required to have reasonable suspicion, based on specific and articulable facts, that there was contraband – physically present contraband, not just evidence of contraband not present at the border – on Mr. Wu's devices prior to beginning their search.

### III. THE CBP AGENTS WHO SEIZED AND SEARCHED MR. WU'S LAPTOPS AND CELL PHONES AT SFO DID SO WITHOUT REASONABLE SUSPICION THAT THE DEVICES CONTAINED CONTRABAND, THEREBY VIOLATING MR. WU'S FOURTH AMENDMENT RIGHTS AGAINST UNREASONABLE SEARCHES AND SEIZURES.

The only basis the CBP case agent and CFA Chinn had for suspecting that there was contraband, specifically child pornography, physically present on Mr. Wu's electronic devices included:

(1) The IP address associated with the suspected downloads of child pornography was linked to the address 20317 Wisteria St. Apt. 4, at which Mr. Wu was one three (later realized to be four) known residents; and

(2) The suspected downloading of child pornography from the IP address ceased on April 20, 2019 at 5:08 a.m., the same day that Mr. Wu departed the United States on a flight bound for Hong Kong.

The HSI and CBP agents did not, however, link the suspected downloading of child pornography from the IP address to any one of the three known residents at the associated address, nor did they link the downloading to any particular device or even type of device at the associated address. Also, they did not link any of the downloading or downloaded material to any electronic device possessed by Mr. Wu – which certainly seems like it would be a necessary step in forming the requisite reasonable suspicion that the child pornography was physically present on Mr. Wu's electronic devices in order to conduct a border search of those devices.

All of the evidence collected by the HSI and CBP agents points to the contraband being located at the 20317 Wisteria St. Apt. 4 address, not being physically present with Mr. Wu upon

---

[9] *Supra* note 6 (defines basic search and how it differs from a cursory search, which would not require reasonable suspicion).

his return from Hong Kong. For example, the HSI records indicated that the downloading ceased on the same day that Mr. Wu left for Hong Kong. However, there was no evidence indicating that any device associated with Mr. Wu downloaded suspected child pornography while he was away, seemingly indicating that any downloading of suspected child pornography occurred at the apartment address.

Therefore, the court should find that the warrantless border search of Mr. Wu's electronic devices at SFO was conducted without the requisite reasonable suspicion that child pornography was physically present on Mr. Wu's device(s), thereby violating Mr. Wu's Fourth Amendment rights against unreasonable searches and seizures.

### IV. MR. WU DID NOT CONSENT TO THE SEARCH OF HIS ELECTRONIC DEVICES.

In order for consent to serve as an exception to the warrant requirement of the Fourth Amendment, that consent must be "freely and voluntarily given."[10]

However, prior to conducting their search of Mr. Wu's electronic devices, the CBP case agent told Mr. Wu to give them the security passwords to access each of his devices and that they were going to conduct a border search of his electronic devices. (See Exhibit A.) Mr. Wu was not given a choice regarding the search and complied simply because he felt that he had to. (See Exhibit A.) Therefore, Mr. Wu did not "freely and voluntarily" consent to the search and the CBP agents needed to have the requisite reasonable suspicion that contraband was physically present on the devices in order to lawfully search them.

### V. ALL EVIDENCE OBTAINED DURING AND AS A RESULT OF THE UNLAWFUL SEARCHES AND SEIZURES OF MR. WU'S ELECTRONIC DEVICES AT SFO SHOULD BE SUPPRESSED PURSUANT TO THE EXCLUSIONARY RULE.

In *Mapp v. Ohio*, the United States Supreme Court affirmed the exclusionary rule with regard to the federal government, stating, "that all evidence obtained by an unconstitutional search and seizure [is] inadmissible in federal court regardless of its source."[11] In *Wong Sun v. United States*, a case concerning the incriminating statements made by the defendant following

---

[10] *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973).

[11] *Mapp v. Ohio*, 367 U.S. 643, 654-55 (1961).

an unlawful, warrantless arrest in his home, the Court extended the application of the exclusionary rule to cover not just evidence obtained directly as result of an unlawful search or seizure, but also other evidence obtained indirectly as a result of that unlawful search or seizure.[12] The Court stated, "evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion."[13]

Here, the CBP agents seized and searched Mr. Wu's electronic devices without the requisite level of cause to justify the search (reasonable suspicion that contraband was present on the devices). Therefore, any evidence obtained during the unlawful search and seizure should be suppressed, as well as any other evidence that was obtained as a result.

## CONCLUSION

For the reasons argued above, this court should suppress all the above listed evidence obtained during and as a result of the unlawful searches and seizures of Mr. Wu's electronic devices at SFO on May 13, 2019.

Dated: January 10, 2020

By:_____
Christopher F. Morales
Attorney for the Defendant

---

[12] *Wong Sun v. United States*, 371 U.S. 471, 485 (1963).

[13] *Id.*

9

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES, | ) Case No.: 3:19-cr-00255 |
|---|---|
| Plaintiff, | ) DECLARATION OF<br>) YUI LUN WU IN SUPPORT OF<br>) MOTION TO SUPPRESS |
| vs. | ) Date:<br>) Time: |
| YUI LUN WU, | ) Dept: |
| Defendant | ) |

TO THE COURT AND THE UNITED STATES, THROUGH THE UNITED STATES ATTORNEY:

    I am the defendant in this action.

    I declare:

    1. After getting off of my flight from Hong Kong to San Francisco International Airport (hereafter 'SFO'), I was met in the immigration mobile passport line by Customs and Border Patrol (hereafter 'CBP') and told that my passport has been flagged.

    2. Upon being met by CBP, I made several attempts to ask the CBP agents what the problem was. I was not given a straightforward answer and was told incorrectly that the issue was an investigation for identity theft.

    3. Immediately after being met by CBP, I was escorted by CBP agents to obtain my luggage at baggage claim and then to a secondary inspection area.

    4. Upon arriving at the secondary inspection area, and without asking for my consent, CBP agents went through all of my belongings and set aside my electronic devices.

    5. In the secondary inspection area, I was told that I was being detained and, if I wanted to go to the bathroom, I would have to be escorted.

    6. After CBP set aside all of my electronic devices, a CBP agent requested that I provide him with the security passwords for each of my devices. I provided the passwords to the agent because I was incredibly nervous and did not feel as though I had a choice.

1

7. After providing the passwords, I was confronted by one of the CBP agents who told me that my electronic devices were going to be subject to a "border search" and that they were authorized to do so under "Chapter 10" or "Chapter 11."

8. After being informed about the "border search," CBP took my electronic devices back into a separate inspection room.

9. Shortly after my electronic devices were taken into the separate inspection room, one of the CBP agents came back and informed me that I had given them an incorrect password for one of my devices. The agent requested that I provide them with the correct password. I informed the agent that I did not feel comfortable giving them the password for whichever device it was requested. The agent then became agitated and said, in a very abrasive and loud tone, "We need those passwords!" Again feeling incredibly nervous and as though I did not have any choice, I provided the correct password.

10. From the time I was escorted to the secondary inspection area until I was arrested, approximately two to three hours had passed.

I declare under penalty of perjury and the laws of the United States that the foregoing is true and correct.

Executed this _____, at _____, California.

_____
Yui Lun Wu
Defendant

## PROOF OF SERVICE

I, Christopher Morales, am a citizen of the U.S., over the age of 18 years, and not a party to this action. My business address is 1388 Sutter St., Ste. 805, San Francisco, CA 94109.

On the date set forth below, I served the documents indicated by

__X__ personally delivering copies of the documents to the addresses indicated below

____ placing them in the US mail, prepaid first class, at San Francisco, CA. Addressed to the persons indicated below

United States Attorney's Office
450 Golden Gate Ave. Suite 20
San Francisco, CA 94102

The document served is a:
**MOTION TO SUPPRESS EVIDENCE OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT**

I declare the foregoing to be true and correct under the penalty of perjury.

**DATED**: January 10, 2020

                                        Christopher F. Morales
                                        Attorney for the Defendant